AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (303) 525-9154

)
)
)
)
)
)
)

Case No. 19-M-131

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 846 and 841(a)(1)

The application is based on these facts: See Affidavit in Support of Application for Search Warrant. To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the requested warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by HSI. See 18 U.S.C. §§ 3122(b), 3123(b).

☒ Delayed notice of _____ days (give exact ending date if more than 30 days: Dec. 28, 2019 is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jeffrey R. Milam, Special Agent DEA
Printed Name and Title

Sworn to before me and signed in my presence:

Date: July 1, 2019

_____
Judge's signature

City and State: Milwaukee, Wisconsin

Honorable David E. Jones, U.S. Magistrate Judge
Printed Name and Title

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey R. Milam, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned cell number **(303) 525-9154** (the **TARGET TELEPHONE**), whose cell phone provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251. The **TARGET TELEPHONE** is described herein, and in Attachment A, and the location information to be seized is described herein, and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Federal law enforcement officer/Special Agent with the Drug Enforcement Administration, and have been since September 2014. Prior to my current assignment, I was employed as a police officer with the St. Louis County Police Department in St. Louis, Missouri. During the last three years of my previous employment, I was a Task Force Officer with the DEA. During my tenure as a Special Agent, I have been involved primarily in the investigation of large scale narcotics traffickers operating not only in the City of Milwaukee and

1

the State of Wisconsin, but also throughout the entire United States based upon the direction of my and/or other investigations that arise through the Milwaukee District Office of the Drug Enforcement Administration. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

   b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

   c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

   d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5. I am currently participating in an investigation of a methamphetamine, heroin, and cocaine trafficker identified as Crisobal PINO-OCHOA (a/k/a "Paisa"). I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (c) information obtained from cooperating citizen witnesses, confidential sources, and defendants, whose reliability is established herein.[1] This affidavit is intended to show

---

[1] Throughout this affidavit, reference will be made to officers. Officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

3

merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by PINO-OCHOA, and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. In February 2019, investigators from the North Central HIDTA Interdiction/ DEA Drug Task Force Group 68 (HIDTA officers) began investigating Maximino VARGAS, a suspected methamphetamine, cocaine and marijuana distributor in the Milwaukee area. The investigation involved the controlled purchase of controlled substances from VARGAS and the execution of search warrants at VARGAS's place of business and residence.

9. Between April 4, 2019 and May 29, 2019, a confidential informant (CI), who was working under the supervision of HIDTA officers, conducted five controlled purchases of high-purity methamphetamine from VARGAS near his residence in Milwaukee, Wisconsin. Specifically, on April 4, 2019, the CI obtained 27.9 grams (net) of 99% pure methamphetamine

4

from VARGAS in exchange for $500; on April 5, 2019, the CI obtained 27.7 grams (net) of 100% pure methamphetamine from VARGAS in exchange for $500; on April 11, 2019, the CI obtained 167.7 grams (net) of 100% methamphetamine from VARGAS in exchange for $2,500; on May 2, 2019, the CI obtained 55.9 grams (net) of 100% pure methamphetamine in exchange for $1,000; on May 29, 2019, the CI obtained 50.43 grams of a substance that field-test positive for methamphetamine, and which, based on your Affiant's training and experience, appeared to be high-purity methamphetamine (i.e., "crystal" methamphetamine).

10. On June 14, 2019, VARGAS informed the CI that he had recently received 5 pounds of methamphetamine. Based on this representation to the CI, and based on the above-referenced controlled buys from VARGAS, HIDTA officers obtained a state warrant to search 1743 and 1745 S. Muskego Avenue, Milwaukee, Wisconsin (i.e., VARGAS's premises). On June 17, 2019, at approximately 8:49 a.m., the officers executed a search warrant at the premises. VARGAS was present at the premises. A search of a second floor, makeshift pantry/closet in 1743 S. Muskego Avenue yielded the following items: four (4) packages containing **1.45 kilograms** (3.2 pounds) of **methamphetamine** (field-testing positive for methamphetamine), **205.24 grams** of **cocaine** (field-testing positive for cocaine), **43.47 grams** of **heroin** (field-testing positive for heroin), **1.33 grams** of **methamphetamine** (field-testing positive for methamphetamine), and **6.6 grams** of **cocaine** (field-testing positive for cocaine). In the kitchen of 1743 S. Muskego Avenue, officers found an LG cell phone and an AT&T flip phone. In the northwest bedroom area of the second floor of 1743 S. Muskego Avenue, officers found **13.28 grams** of **marijuana** (field-testing positive for marijuana) on a window sill and a black, Glock, .380 caliber, semi-automatic pistol, serial no. ADAH287, on the top shelf of a closet. On the third floor of 1743 S. Muskego Avenue, officers found two separate quantities of marijuana (i.e.,

**96.01 grams** and **4.24 grams** – field-testing positive for marijuana), and a Schryver, model S-15, 5.56 caliber rifle, serial no. S00196 (the same AR-15 found during the February 15, 2019 search), located on a window sill in the east bedroom. During a search of VARGAS's bedroom in 1743 S. Muskego Avenue, officers found a black Smith & Wesson, 9mm semi-automatic pistol, serial no. NPD8972, inside a dresser drawer, two Samsung Galaxy S7 cell phones, and $21,186. Officers also found multiple, digital scales throughout the premises.

11. On June 17, 2019, the HIDTA officers arrested VARGAS based on the several controlled buys, and the evidence seized during the search of his premises. After a criminal complaint was filed, alleging various violations of Federal controlled-substance and firearms laws, VARGAS agreed to cooperate with the Government. VARGAS said his methamphetamine source-of-supply was an Hispanic male, approximately 52-54 years old, about 5'9" – 5'10," approximately 150-160 lbs., named Cristobal Pino, who used the nickname "Paisa," and lived in Rockford, Illinois. VARGAS subsequently identified a Illinois Depatment of Trasportation photograph of Cristobal PINO-OCHOA (DOB: 02-13-66) as "Paisa." VARGAS had known PINO-OCHOA for approximately one year. VARGAS said in addition to methamphetamine, PINO-OCHOA supplied VARGAS heroin, cocaine, and marijuana. VARGAS estimated PINO-OCHOA supplied him illegal drugs on 25 occasions. On two of those occasions, PINO-OCHOA supplied VARGAS methamphetamine. On the first occasion, PINO-OCHOA "fronted" (i.e., supplied the illegal drug with the expectation of later payment) VARGAS about 3 lbs. of methamphetamine. PINO-OCHOA charged VARGAS $4,000 per pound of methamphetamine. On the second occasion, PINO-OCHOA "fronted" VARGAS about 4 pounds of methamphetamine. According to VARGAS, the 3.2 pounds of methamphetamine that the officers seized at his premises on June 17, 2019 was what remained of

6

the second quantity of methamphetamine supplied by PINO-OCHOA. VARGAS said that while he was in pre-trial custody between June 17, 2019 and June 27, 2019, PINO-OCHOA and other Hispanic males came to his Milwaukee residence to collect the proceeds from the sale of the 4 pounds of methamphetamine previously supplied by PINO-OCHOA. VARGAS's family informed these men that VARGAS was in California, but would return. On one occasion, PINO-OCHOA left his cellular telephone number – **303-525-9154** (the **TARGET TELEPHONE**) – to allow VARGAS to contact him upon his return to Milwaukee.

12. On June 28, 2019, at approximately 9:31 a.m., VARGAS made a consensually-recorded call to the **TARGET TELEPHONE**, which was also monitored by HIDTA officers. VARGAS recognized the voice of the person who answered the **TARGET TELEPHONE** as belonging to PINO-OCHOA. During the monitored phone call, PINO-OCHOA told VARGAS that he "left him hanging" regarding the money, i.e., VARGAS had not yet paid PINO-OCHOA for the fronted methamphetamine. VARGAS told PINO-OCHOA that he was in California, that he would return to Milwaukee the following Sunday, and that he could meet PINO-OCHOA the following Monday. PINO-OCHOA told VARGAS that he would be ready to meet him. PINO-OCHOA also said that he would be going to Colorado and could bring back "fifteen of them," which VARGAS understood to mean fifteen (15) pounds of methamphetamine.

13. On June 30, 2019, at approximately 3:58 p.m.., VARGAS received a phone call from the **TARGET TELEPHONE**. The call was neither recorded, nor was it monitored by HIDTA officers. After the call, however, VARGAS promptly contacted HIDTA officers to discuss the substance of the communication. According to VARGAS, he spoke to PINO-VARGAS, who was using the **TARGET TELEPHONE**. During the call, VARGAS told PINO-OCHOA that VARGAS would return to Milwaukee on Tuesday night and could meet

7

with PINO-OCHOA on Wednesday morning (i.e., 07-03-19) to pay the balance that VARGAS owed for the methamphetamine. VARGAS said PINO-OCHOA agreed to meet Wednesday. According to VARGAS, PINO-OCHOA said he needed the money in order to pay his drug source in Colorado, who he did not want to disappoint. PINO-OCHOA indicated that once he receives the payment from VARGAS, he intends to travel straight to Colorado where he will pick up fifteen (15) pounds of methamphetamine, which he will bring directly to VARGAS in Milwaukee. PINO-OCHOA said that he would also bring an unspecified quantity of heroin to VARGAS.

14. A review of Sprint telephone records for **303-525-9154** (the **TARGET TELEPHONE**) revealed that the phone is subscribed to "Jose" at 1029 Broadway, Rockford, Illinois 61104. As noted above, when VARGAS has called the **TARGET TELEPHONE**, PINO-OCHOA has been the person who answered and communicated on that line.

15. Given that PINO-OCHOA, like most contemporary cellular telephone users, likely possesses, or has in close proximity, the **TARGET TELEPHONE** nearly everywhere he goes, location information for the **TARGET TELEPHONE**, such as E-911 Phase II data, GPS data, and latitude-longitude data, will assist law enforcement in more precisely ascertaining his movements. By more precisely ascertaining PINO-OCHOA's movements, law enforcement officers will be better able to divine patterns from those movements, ascertain periods of heightened activity, and thereby more effectively conduct physical surveillance. As a result, law enforcement officers will be better able to, among other things, discern PINO-OCHOA's drug distribution routes, identify confederates involved in the distribution of controlled substances, and identify locations where those controlled substances, and proceeds from the sale of those controlled substances, may be concealed.

8

Case 2:19-mj-00131-DEJ   Filed 07/23/19   Page 9 of 14   Document 1

16. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the **TARGET TELEPHONE**, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's networks or with such other reference points as may be reasonably available.

18. Based on my training and experience, I know that Sprint can collect cell-site data about the **TARGET TELEPHONE**.

9

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the **TARGET TELEPHONE**, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1).

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

10

Case 2:19-mj-00131-DEJ   Filed 07/23/19   Page 11 of 14   Document 1

21. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **TARGET TELEPHONE** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

11

ATTACHMENT A

Property to Be Searched

1. The cellular telephone assigned cell number **303-525-9154**, whose wireless communications service provider is Sprint, 6480 Sprint Parkway, Overland Park, KS 66251

2. Information about the location of **303-525-9154** that is within the possession, custody, or control of Sprint.

1

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of **303-525-9154** described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of **303-525-9154** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of **303-525-9154** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).